**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

---

**SHAUN WROBLEWSKI** **PLAINTIFF**

**VS.** **CAUSE NO.:** 3:17cv146-MPM-RP

**JON TYLER and**
**KENDALL OLIVER** **DEFENDANT**

**JURY TRIAL DEMANDED.**

---

# COMPLAINT

---

Plaintiff states his causes of action for damages for violation of his rights, privileges and immunities under the First and Fourth Amendments of the United States Constitution pursuant to 42 U.S.C. §1983 as follows:

## I. Jurisdiction and Venue

1. The Court has jurisdiction over this lawsuit because at least one count of the lawsuit arises under federal law, 42 U.S.C. § 1983. Jurisdiction over such cause and the other causes of action in this lawsuit is pursuant to 28 U.S.C. §1331 and §1367.

2. Venue is proper in the Northern District of Mississippi under 28 U.S.C. §1391.

## II. Parties

3. Plaintiff Shaun Wroblewski is an adult resident citizen of Tipton County, Tennessee.

4. Defendant Jon Tyler (hereinafter "Tyler") was at all times relevant hereto a deputy employed by the Tunica County, Mississippi, Sheriff's Department. Currently, Tyler is a

police officer employed by the City of Hernando, Mississippi, Police Department. He may be served with process at his place of business, 2601 Elm Street, Hernando, Mississippi.

5. Defendant Kendall Oliver (hereinafter "Oliver") was at all times relevant hereto a deputy employed by the Tunica County, Mississippi, Sheriff's Department. Upon information and belief, Oliver is currently an employee of the Memphis, Tennessee, Police Department.

## III. Factual Allegations

6. On October 1, 2014, Plaintiff and a friend were guests at the Gold Strike Casino hotel in Robinsonville, Mississippi.

7. That night, Plaintiff was listening to music in the hotel room, and Plaintiff's friend was sleeping when there was a knock on their hotel room door.

8. Plaintiff answered the door, and two hotel security guards and two Tunica County Sheriff's deputies entered the hotel room.

9. Plaintiff was informed that there was a report that there was a female who had been pulled into a room. Plaintiff allowed the security personnel and the deputies to search the room to insure there was no woman in the room.

10. After the search, Plaintiff indicated to the security personnel and to the deputies that, if a woman was really in danger somewhere, they should go and find out who was actually responsible.

11. Despite the fact that there was clearly no woman in the room and the fact that neither Plaintiff nor his friend had done anything wrong, Plaintiff and his friend were told that they had to pack their bags and leave the hotel.

12. At that point, Plaintiff began to record the interaction on his mobile phone.

13. Plaintiff repeatedly asked one of the Gold Strike security guards, “Why am I being forced to leave?”

14. The security guard responded by telling Plaintiff to “gather [his] belongings.”

15. During the encounter, Plaintiff’s friend, Eric Honaker, was packing up his belongings and those of Plaintiff, complying with what he and Plaintiff were told to do.

16. Again, Plaintiff asked, “Why do I have to leave?” adding “Nothing happened here. You can check your security cameras. Ain’t nobody came in or out of this room at all.”

17. Defendant Tyler responded, saying, “Sir we’ve told you multiple times to gather your stuff and go.”

18. Plaintiff again asked why he was being forced to leave, and asked “What did I do wrong here?”

19. Rather than anyone offering any justification for why Plaintiff was being forced to leave his hotel room, the security guard again told Plaintiff to “gather [his] belongings and leave.” Again, Plaintiff’s friend was already packing all of their belongings.

20. Plaintiff simply asked again for an explanation of why he was being forced to leave his hotel room, at which point he was told by Defendant Tyler to “turn around and put [his] hands behind his back.”

21. Plaintiff asked, “Why do I have to put my hands behind my back?” and Defendant Tyler replied, “Because he told you to leave. Disorderly conduct, failure to comply.”

22. Defendant Tyler was across the room from Plaintiff, casually leaning on a chair, and he made no attempt to place Plaintiff under arrest at that point.

23. Plaintiff asked, “Why do I have to comply? What did I do?” to which the Defendant Oliver responded, “He just told you to leave.” Oliver said this while standing in front of Plaintiff and playing with his handcuffs.

24. Plaintiff then stated, “Okay, I will be willing to leave, but I want to know why. What did I do?”

25. Oliver then said, “Go ahead and leave” and Defendant Tyler said, “I’m not going to tell you again, son.”

26. Plaintiff again stated that he wanted to know why he was being forced to leave.

27. Defendant Tyler’s response was to pull out his TASER.

28. Plaintiff asked, “Why do I have to be handcuffed now and why do I have to leave? I did not do anything wrong. I did not do anything wrong.”

29. Defendant Tyler again said, “I’m not going to tell you again.”

30. Plaintiff asked Oliver what his name was, to which Oliver replied, “We already told you it’s time for you to go.”

31. Defendant Tyler then approached Plaintiff and said, “Turn around.”

32. Plaintiff stated, “I want to know why I have to.”

33. Defendant Tyler again said, “Turn around.”

34. Plaintiff again asked, “Why?”

35. Defendant Tyler again just said, “Turn around.”

36. Plaintiff again asked Defendant Tyler why he had to leave.

37. Defendant Tyler then grabbed Plaintiff by his right arm and twisted Plaintiff’s right arm behind his back and said, “You’ve been told.”

38. Defendant Tyler then tased Plaintiff.

39. Plaintiff fell to the floor on his back, and he said, “Get off me. I didn’t do anything wrong.”

40. Defendant Tyler aimed his TASER at Plaintiff and said “Roll over.”

41. Plaintiff was in the process of rolling over when Defendant Tyler tased Plaintiff again, this time on his stomach.

42. Defendant Tyler delivered at least three charges to Plaintiff with his TASER. Plaintiff’s cell phone video stops after the tasing.

42. Plaintiff was placed in handcuffs following the tasing.

43. Understandably shaken and distressed, Plaintiff asked for water, but he was given none.

44. EMT personnel came to the hotel room and extracted the TASER barbs from Plaintiff, which took approximately five minutes because the barbs were so deep after being used at such close range.

45. Plaintiff’s friend was allowed to leave with all of their personal items, which he had been packing during the entire encounter.

46. Plaintiff was walked through the hotel lobby in handcuffs and placed in a sheriff’s department vehicle.

47. Plaintiff was transported to the Tunica County Jail.

48. Plaintiff was charged with disorderly conduct, failure to comply, and resisting arrest. All charges were dismissed.

## IV. Causes of Action

49. The actions of the individual defendants, as described above, were objectively unreasonable in light of Plaintiff's clearly established constitutional rights. Defendants were at all times acting under color of state law.

50. The amount of force used against Plaintiff during his arrest was unreasonable, excessive, and unnecessary, evidencing sadistic intention and violating his right to be free from the use of excessive force under the Fourth Amendment to the United States Constitution.

51. Plaintiff's arrest was without probable cause, violating his right to be free from an arrest without probable cause under the Fourth Amendment to the United States Constitution.

52. Plaintiff's arrest was nothing more than the result of retaliatory animus on the part of the individual defendants for Plaintiff's exercise of his right to free speech under the First Amendment to the United States Constitution.

53. Defendant Oliver witnessed all of Defendant Tyler's conduct and directly participated in Plaintiff's arrest. Defendant Oliver did nothing to stop or correct any of Defendant Tyler's obviously unreasonable actions.

54. Under 42 U.S.C. § 1983, Plaintiff is entitled to recover damages resulting from the violation of his clearly established constitutional rights as detailed above.

55. Under 42 U.S.C. § 1988, Plaintiff is further entitled to recover attorney fees, costs, and expenses accumulated during the prosecution of this action.

56. Plaintiff is further entitled to punitive damages against the individual defendants as a result of their wrongful, willful, gross, and oppressive conduct.

## V. DAMAGES

57. As a result of the conduct of the defendants, as described above, Plaintiff suffered and continues to suffer, medical expenses, physical pain and suffering and loss of enjoyment of life, and emotional and mental distress, including fear, humiliation, defamation of character, and embarrassment.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays for judgment against the defendants, jointly and severally, for compensatory damages and punitive damages, as well as attorney fees, costs, expenses, the amounts of which to be shown at trial, and for all other such relief, both general and specific, available to Plaintiff under law.

Respectfully submitted, this the 11th day of August, 2017.

BY: s/ Brandon Flechas
BRANDON FLECHAS (MSB#102283)
PHILIP A. STROUD (MSB# 99401)
THE STROUD LAW FIRM, P.C.
5779 Getwell Road, Suite C-1
Southaven, MS 38672
Tel. (662)536-5656
Fax (662)536-5657
brandon@stroudlawyers.com
philip@stroudlawyers.com
Attorneys for Plaintiff

**PLAINTIFF RESPECTFULLY REQUESTS A JURY TRIAL ON ALL COUNTS.**