IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**SHAUN WROBLEWSKI**                                                                           **PLAINTIFF**

**V.**                                                                                                              **NO. 3:17cv146-M**

**JON TYLER** and
**KENDALL OLIVER**                                                                             **DEFENDANT**

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This cause comes before the Court on Defendants' *Motion for Summary Judgment* [41]. The Court, having considered the memoranda and submissions of the parties, along with relevant case law and evidence, is now prepared to rule.

**A. Background**

On the evening of September 30, 2014, Plaintiff Shaun Wroblewski, along with his friend, Eric Honaker, arrived at Gold Strike Casino in Tunica Resorts, Mississippi, and checked into room 437. That night, both men remained in their room and drank some alcoholic beverages.

In the early morning of October 1, 2014, Plaintiff called the hotel's Front Desk and requested matches. He later called again and requested six bottles of water. Felicia Flowers was the employee who made both deliveries. After her second delivery, Ms. Flowers reported to her supervisor that when she arrived at room 437 to deliver the water she overheard one of the occupants say that he was going to try to get her into the room. In her statement, Ms. Flowers stated that, upon delivering the water, one man was standing behind the door and the other grabbed her arm and tried to pull her into the room. Ms. Flowers was able to get away and notify the hotel's front desk and security.

At or around 1:53 a.m. on October 1, 2014, the hotel supervisor requested that security visit room 437. Mr. Bafford (hotel security) contacted Tunica County Sheriff's Department and, at

approximately 2:07 a.m., Defendants John Tyler and Kendall Oliver were dispatched to the Gold Strike Casino. At approximately 2:24 a.m., Mr. Bafford and both Defendants visited room 437 to speak with Plaintiff and Honaker. Plaintiff opened the door and was informed of the report that somebody had been pulled into the room and that there had been screams. Plaintiff and Honaker both denied knowledge of the situation and allowed the Defendants and the security to enter the room and conduct a search.

After a search was conducted, Bafford told Plaintiff and Honaker they had to leave the premises. Honaker began packing belongings. Plaintiff, upon being asked to vacate the premises, took out his cellphone and began video recording the situation. Per the video submission, Plaintiff was repeatedly asked—by both Bafford and the Defendants—to gather his things and leave, and Plaintiff continually asked for an explanation as to why he was being forced to leave. This back and forth ensued for a while.

Deputy Tyler eventually commanded Plaintiff to put his hands behind his back. Instead of placing his hands behind his back, Plaintiff now asked why he was being asked to place his hands behind his back. Defendant Tyler responded to Plaintiff's question by stating "Because he told you to leave. Disorderly conduct, failure to comply." At this point, Deputy Oliver, standing in front of Plaintiff holding his handcuffs, said "[Bafford] just told you to leave." Plaintiff then commented "I will be willing to leave, but I want to know why. What did I do?" For a while longer, Plaintiff continued to ask why he was being asked to leave and for Bafford to state for the record the reason why he was being asked to vacate the premises. In the background Defendant Tyler can be heard saying "I am not going to tell you again."

Deputy Tyler then approached Plaintiff and instructed him to "turn around." After Plaintiff asked why, Deputy Tyler grabbed his right arm and turned him against the bar. In a series of events,

2

Plaintiff fell onto the ground and landed on his back. At this point, Deputy Tyler applied a drive stun with his taser on Plaintiff. Deputy Tyler then commanded Plaintiff to roll over onto his stomach. Plaintiff can also be heard yelling "get off of me" as we see Deputy Oliver over Plaintiff's upper body area (somewhere by Plaintiff's shoulders). Not rolling over, Defendant Tyler deployed the probes of his taser and tasered Plaintiff a total of three times.

At 2:57 a.m. hotel security cameras captured Defendants escorting Plaintiff to their patrol car. The General Affidavits of arrest list Plaintiff's violations as disorderly conduct, failure to comply, and resisting arrest. Plaintiff posted bail the following morning on October 2, 2014, and visited the emergency room after suffering chest pains, muscle spasms, nausea, feelings of burning, and dehydration. All charges were eventually dropped.

Plaintiff has brought claims against Defendant Tyler and Defendant Oliver for false arrest, excessive force, and *First Amendment* retaliation. Defendants moved for summary judgment based on their asserted defense of qualified immunity.

### B. Standard of Review

#### a. Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986). At the summary judgment stage, the court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L. Ed. 2d 105 (2000).

### b. Qualified Immunity

Qualified immunity requires a two-pronged analysis. *Kinney v. Weaver*, 367 F.3d. 337, 374 (5th Cir. 2004). The court has discretion to decide "which of the two prongs" to address first. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L. Ed. 2d 565 (2009). To rebut a defendant's qualified immunity defense, the plaintiff must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 2085, 179 L. Ed. 2d 1149 (2011). For a right to be clearly established, it must be sufficiently clear "that every 'reasonable official would have understood that what he is doing violates that right.'" *Id*. 563 U.S. at 741, 131 S.Ct. at 2083 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L. Ed. 2d 523 (1987)).

### C. Discussion

### a. False Arrest

"The constitutional claim of false arrest requires a showing of no probable cause." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) (citing *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001)). Probable cause is defined as "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Piazza v. Mayne*, 217 F.3d 239, 245–46 (5th Cir. 2000). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 126 S. Ct. 588, 160 L. Ed. 2d 537 (2004).

Section 97-35-7 of Mississippi Code Annotated provides:

(1) Whoever, with intent to provoke a breach of the peace, or under such circumstances as may lead to a breach of the peace, or which may cause or occasion a breach of the peace, fails or refuses to promptly comply with or obey a request, command, or order of a law enforcement officer, having the authority to then and there arrest any person for a violation of the law, to:

   **a.** Move or absent himself and any vehicle or object subject to his control from the immediate vicinity where the request, command, or order is given, or …
. . .
   i. Act or do or refrain from acting or doing as ordered, requested or commanded by said officer to avoid any breach of the peace at or near the place of issuance of such order, request or command, shall be guilty of disorderly conduct, which is made a misdemeanor . . .

As to trespassing, section 97-17-87 of the Mississippi Code Annotated states:

Any person who shall be guilty of a willful or malicious trespass upon the real or personal property of another, for which no other penalty is prescribed, shall upon conviction, be fined not exceeding Five Hundred Dollars ($500.00), or imprisoned not more than six (6) months in the county jail, or both.

Per the record evidence before the court, Defendants, upon arriving at Gold Strike were informed by Ms. Flowers and hotel security that the men in room 437 attempted to drag her into their room. Defendants were also informed that hotel security would be asking the men in room 437 to leave the hotel. Upon arriving to room 437, Plaintiff was informed of the incident report and allowed Defendants and hotel security to conduct a search. Hotel security then instructed Plaintiff and Honaker to grab his things and leave. Instead of complying, Plaintiff began recording the situation. At the 00:44 mark of the video recording, we can hear Defendant Tyler tell Plaintiff: "he's already told you multiple times to gather your stuff and go." Plaintiff's response was "I know. I want to know why I have to leave."

"The fact that Plaintiff was not formally charged with the crime[s] of [disorderly conduct and trespassing] is irrelevant to the qualified immunity analysis." *Harbour v. Clarke Cty., Miss.*,

5

2015 WL 7582872 (S.D. Miss. Nov. 25, 2015) (citing *Club Retro*, 568 F.3d at 204). The facts known to Defendants at the time and prior to the arrest were that Plaintiff remained in the room, refusing to leave until he captured the reason for his eviction on video, after continuously being instructed to gather his things and vacate the premises. Therefore, Defendants had probable cause to believe that Plaintiff was trespassing and engaging in disorderly conduct by refusing to do as ordered—Defendants are, thus, entitled to qualified immunity as to Plaintiff's false arrest claim.

### b. Excessive Force

Defendants also argue qualified immunity as to Plaintiff's claim that Defendants violated his right to be free from excessive force. To establish a claim of excessive force, Plaintiff must show: "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and that (3) the force used was objectively unreasonable." *Hogan v. Cunningham*, 722 F.3d 725, 734 (5th Cir. 2013) (quoting *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004)). "'To gauge the objective reasonableness of the force used by a law enforcement officer, we must balance the amount of force used against the need for force,' paying 'careful attention to the facts and circumstances of each particular case.'" *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008) (quoting *Flores*, 381 F.3d at 399).

#### i. Injury

"'We no longer require significant injury for excessive force claims . . . but the injury must be more than *de minimis*." *Hanks v. Rogers*, 853 F.3d 738, 745 (5th Cir. 2017) (quoting *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005)).

The morning of October 2, 2014, after the tasering and after being released, Plaintiff visited an emergency room for chest pain, dehydration, muscle spasms, nausea and shortness of breath. Plaintiff was then prescribed medication for his symptoms. Furthermore, Plaintiff contends that he

6

suffers from, and at the time of his deposition was being treated for, anxiety following the incident. Viewing the record in a light most favorable to Plaintiff, this court finds that Plaintiff's injuries are more than *de minimis*.

### ii. Excessive and Objectively Unreasonable Use of Force

"'Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L. Ed. 2d 443 (1989)). In determining the objective reasonableness of the force applied, courts must consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Graham*, 490 U.S. at 396, 109 S.Ct. 1865. The court must also consider "that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Hanks*, 853 F.3d at 745 (quoting *Graham*, 490 U.S. at 396–97, 109 S.Ct. 1865).

Defendants contend that their use of force was objectively reasonable given the circumstances of the situation and that there was no established law at the time of the incident to suggest that use of a taser to subdue a suspect refusing to roll over constituted excessive force. Defendants assert that Plaintiff was resisting arrest by refusing to obey Defendant Tyler's command to place his hands behind his back, not voluntarily turning around, and failing to roll over onto his stomach when commanded to do so. Plaintiff, however, argues that he was willing to voluntarily leave had Defendants or hotel security given him a reason—on the record (video)— as to why he was being forced to leave, and that he was unable to roll over onto his stomach

because Defendant Oliver was holding him down. Viewing the facts in Plaintiff's favor, and considering the *Graham* factors, this court concludes that there is a genuine issue of material fact as to whether Defendants' conduct was objectively reasonable.

Though this court has concerns about the allegations from Ms. Flowers that the occupants of room 437 (specifically Plaintiff) had in fact assaulted her—grabbing her by the arm and attempting to drag her into the room—the Plaintiff was never charged with this offense. The crimes for which Plaintiff was *actually* arrested were minor crimes and not serious in nature. From the general affidavits of arrest, video, and other submitted evidence, Defendants believed that Plaintiff was committing the crimes of disorderly conduct and trespass—both of which are minor offenses. *See Oliver v. Holmes Cty.*, 2013 WL 4039392 (S.D. Miss. 2013) (citing *Massey v. Wharton*, 477 F. App'x 256, 263 (5th Cir. 2012)); *see also Crowell v. Kirkpatrick*, 4000 Fed. App'x 592, 594–95 (2d. Cir. 2010) ("Plaintiffs were arrested for relatively minor crimes of trespass…). Next, Plaintiff did not pose an immediate risk to the safety of the Defendants or the safety of others. The Defendants both testified during deposition that Plaintiff, prior to his take down, had never been physically threatening, stood in one spot toward the edge of the room with his back against the wall, and was not yelling or screaming or drawing a crowd. Additionally, both testified that they never thought that failure to arrest Plaintiff would lead to a more serious situation. Lastly, prior to the moment that Defendant Tyler took Plaintiff's arm, Plaintiff was at most passively resisting arrest and made no attempt to flee. At all times prior to when Defendant Tyler grabbed Plaintiff's arm, the video shows that Plaintiff was merely asking for somebody to tell him—so that he could capture the reason on video—why he was being asked to leave the hotel. Defendants even described Plaintiff as engaging in passive resistance.

8

Defendants, however, argue that their actions were reasonable because Plaintiff's *resistance to the arrest* caused Defendants to act and use force and that no established law at the time of the incident held that use of a taser to control and handcuff a suspect refusing to roll over constituted excessive force. "'[I]n an obvious case,' the *Graham* excessive-force factors themselves can clearly establish the answer, even without a body of relevant case law." *Newman v. Guedry*, 703 F.3d 757, 764 (5th Cir. 2012) (citing *Brosseau v. Haugen*, 543 U.S. 194, 199, 125 S.Ct. 596, 150 L. Ed. 2d 583 (2004)). As noted above, the first two *Graham* factors support Plaintiff's argument of excessive force—the crimes were minor offenses and Plaintiff was not a threat to the Defendants or to others. Whether Defendants are entitled to qualified immunity will depend on whether the Defendants' actions were reasonable.

The video shows that for two minutes, Plaintiff continually asked Defendants as well as hotel security to state why he had to leave. At the 2:00 minute mark Defendant Tyler instructed Plaintiff to turn around to effectuate an arrest. Plaintiff then asked "Why? State for the record why I have to leave." At this point, Defendant Tyler grabbed Plaintiff's right arm and turned him onto the bar to handcuff him and said, "because you've been told." The video then shows Defendant Tyler struggle to handcuff Plaintiff who then landed on his back on the bedroom floor. It was then that Defendant Tyler, with taser in hand, commanded Plaintiff to roll over onto his stomach. Upon Plaintiff's failure to roll over onto his stomach, Defendant Tyler used his taser in "drive stun mode" –taser probes are not yet released but, nonetheless, cause some pain and discomfort to help gain control of a resisting suspect. Still failing to roll onto his stomach, Defendant Tyler then tasered Plaintiff three times. Plaintiff alleges that he was unable to roll over because Defendant Oliver, who can be seen on the bottom left corner of the video during the tasering, was holding him down. While we see Defendant Oliver we also hear Plaintiff yelling "get off of me". Defendants argue

that Oliver was standing up beside Tyler, whereas Plaintiff argues that Defendant Oliver was holding him down. The disputed fact of whether Defendant Oliver prevented Plaintiff from rolling over because he was holding him down is a material fact that must be resolved prior to a determination of objective reasonableness and whether Defendants are entitled to qualified immunity. Additionally, whether Defendants escalated the situation by using physical force after an approximate thirty-minute encounter with Plaintiff—and having had an opportunity to re-state the reason for him being asked to leave—are also matters for a jury. A jury may find that the arrest and the resulting physical force were unreasonable when negotiation may have been an option. In the video recording, Plaintiff stated: "I will be willing to leave, but I want to know why, what did I do?" In their depositions, both Defendants testified that there was no harm in explaining to Plaintiff again the reason for his eviction.

Considering the record in a light most favorable to Plaintiff, a reasonable jury could find that Defendants' actions and use of the taser on Plaintiff were excessive and not objectively reasonable. Therefore, Defendant Tyler and Defendant Oliver are not entitled to qualified immunity on Plaintiff's excessive force claim at this summary judgment stage.

    **c. First Amendment Retaliation**

"[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Hous., Tex. v. Hill*, 482 U.S. 451, 461, 107 S.Ct. 2502, 96 L. Ed. 2d 398 (1987). "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics from which we distinguish a free nation from a police state." *Id*. at 462–63, 107 S.Ct. 2502. Nonetheless, the validity of a First Amendment claim hinges on whether probable cause exists for the arrest. *See Mesa v. Prejean*, 543 F.3d 264 (5th Cir. 2008). "If [probable cause] exists, any argument that the arrestee's speech

as opposed to her criminal conduct was the motivation for her arrest must fail, no matter how clearly that speech may be protected by the First Amendment." *Mesa*, 543 F.3d at 273.

In the present case, Plaintiff argues that his questioning of the eviction resulted in his arrest, and that such arrest was motivated by his speech. Ultimately, Plaintiff's First Amendment claim hinges on whether probable cause existed to arrest Plaintiff. However, because this court has found that probable cause exists for Plaintiff's arrest, Plaintiff's First Amendment retaliation claim fails as a matter of law. Plaintiff's First Amendment Claim is, therefore, dismissed.

### D. Conclusion

Accordingly, Defendants' *Motion for Summary Judgment* [41] is GRANTED IN PART (Defendants are entitled to qualified immunity as to the false arrest claim) and DENIED IN PART (Defendants are not entitled to qualified immunity as to the excessive force claim). Additionally, Plaintiff's First Amendment claim is DISMISSED per the court's finding that probable cause existed for Plaintiff's arrest.

SO ORDERED, this the 10th day of October, 2018.

**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**