IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

SHAUN WROBLEWSKI                                                                                    PLAINTIFF

V.                                                                                                  NO. 3:17cv146-M

JON TYLER and
KENDALL OLIVER                                                                                      DEFENDANT

**ORDER**

This cause comes before the Court on Defendants' *Motion in Limine (Daubert)* [44]. This court, having reviewed the parties' submissions and relevant case law, is now prepared to rule.

**Background**

On the evening of September 30, 2014, Plaintiff Shaun Wroblewski, along with his friend, Eric Honaker, arrived at Gold Strike Casino in Tunica Resorts, Mississippi, and checked into room 437. That night, both men remained in their room and drank some alcoholic beverages.

In the early morning of October 1, 2014, Plaintiff called the hotel's Front Desk and requested matches. He later called again and requested six bottles of water. Felicia Flowers was the employee who made both deliveries. After her second delivery, Ms. Flowers reported to her supervisor that when she arrived at room 437 to deliver the water she overheard one of the occupants say that he was going to try to get her into the room. In her statement, Ms. Flowers stated that, upon delivering the water, one man was standing behind the door and the other grabbed her arm and tried to pull her into the room. Ms. Flowers was able to get away and notify the hotel's front desk and security.

At or around 1:53 a.m. on October 1, 2014, the hotel supervisor requested that security visit room 437. Mr. Bafford (hotel security) contacted Tunica County Sheriff's Department and, at

1

approximately 2:07 a.m., Defendants John Tyler and Kendall Oliver were dispatched to the Gold Strike Casino. At approximately 2:24 a.m., Mr. Bafford and both Defendants visited room 437 to speak with Plaintiff and Honaker. Plaintiff opened the door and was informed of the report that somebody had been pulled into the room and that there had been screams. Plaintiff and Honaker both denied knowledge of the situation and allowed the Defendants and the security to enter the room and conduct a search.

After a search was conducted, Bafford told Plaintiff and Honaker they had to leave the premises. Honaker began packing belongings. Plaintiff, upon being asked to vacate the premises, took out his cellphone and began video recording the situation. Per the video submission, Plaintiff was repeatedly asked—by both Bafford and the Defendants—to gather his things and leave, and Plaintiff continually asked for an explanation as to why he was being forced to leave. This back and forth ensued for a while.

Deputy Tyler eventually commanded Plaintiff to put his hands behind his back. Instead of placing his hands behind his back, Plaintiff asked why he was being asked to place his hands behind his back. Defendant Tyler responded to Plaintiff's question by stating "Because he told you to leave. Disorderly conduct, failure to comply." At this point, Deputy Oliver, standing in front of Plaintiff holding his handcuffs, said "[Bafford] just told you to leave." Plaintiff then commented "I will be willing to leave, but I want to know why. What did I do?" For a while longer, Plaintiff continued to ask why he was being asked to leave and for Bafford to state for the record the reason why he was being asked to vacate the premises. In the background Defendant Tyler can be heard saying "I am not going to tell you again."

Deputy Tyler then approached Plaintiff and instructed him to "turn around." After Plaintiff asked why, Deputy Tyler grabbed his right arm and turned him against the bar. In a series of events,

2

Plaintiff fell onto the ground and landed on his back. At this point, Deputy Tyler applied a drive stun with his taser on Plaintiff. Deputy Tyler then commanded Plaintiff to roll over onto his stomach. Plaintiff can also be heard yelling "get off of me" as we see Deputy Oliver over Plaintiff's upper body area (somewhere by Plaintiff's shoulders). Not rolling over, Defendant Tyler deployed the probes of his taser and tasered Plaintiff a total of three times.

At 2:57 a.m. hotel security cameras captured Defendants escorting Plaintiff to their patrol car. The General Affidavits of arrest list Plaintiff's violations as disorderly conduct, failure to comply, and resisting arrest. Plaintiff posted bail the following morning on October 2, 2014, and visited the emergency room after suffering chest pains, muscle spasms, nausea, feelings of burning, and dehydration. All charges were eventually dropped.

Plaintiff brought claims against Defendant Tyler and Defendant Oliver for false arrest, excessive force, and *First Amendment* retaliation. On October 12, 2018, this court issued an order in which: (1) it found probable cause existed to support Defendants' belief that Plaintiff was committing a crime; (2) it denied summary judgment as to Plaintiff's excessive force claim; and (3) it dismissed Plaintiff's First Amendment retaliation claim. In the present motion, Defendants seek to exclude certain opinions of Plaintiff's expert Robert C. Willis.

**Standard**

Rule 702 of the Federal Rules of Evidence allows opinion testimony of "an expert by knowledge, skill, experience, training, or education . . . if: (a) the expert's scientific, technical, or other knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods of the facts of the case." Fed. R. Evid. 702. The district court serves as a "gatekeeper" to ensure

the expert testimony is both reliable and relevant. *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993)). The trial judge is responsible for ensuring that the proposed testimony is supported by "good grounds." *Daubert*, 509 U.S. at 590. "The 'expert testimony proffered in the case [must be] sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Kuhrt*, 788 F.3d 403, 420 (5th Cir. 2015).

## Discussion

Defendants seek to exclude the following opinions offered by Plaintiff's expert Robert C. Willis: (1) that Defendants had no legal authority to arrest the Plaintiff; (2) that Defendants arrested the Plaintiff because they were annoyed by his questions; (3) that there was no probable cause to arrest the Plaintiff; (4) that Plaintiff was falsely imprisoned; (5) that the Defendants escalated the situation by failing to use professional communication skills and crisis intervention tactics; (6) that the Defendants discounted their training and/or department policy; (7) that the Defendants did not exhaust all verbal possibilities and did not adhere to trained and nationally recognized concepts to justify taking action; (8) that the Defendants' actions do not comply with *Graham v. Connor*; (9) that the Plaintiff's actions did not rise to the level of disorderly conduct; (10) that the Defendants' use of poor stabilization techniques and no team tactics caused excessive force to be "reapplied"; and (11) that Defendants' failure to file charges for trespassing is relevant to the issue of probable cause.

Per this Court's October 12, 2018 opinion and order, Plaintiff's expert's opinions (1), (2), (3), (4), (9) and (11) are no longer relevant. This court in its October 12, 2018 order held that probable cause existed to support Defendants' belief that Plaintiff was committing a crime. The fact that Plaintiff was never charged with either crime (disorderly conduct or trespass) is irrelevant to the issue of probable cause.

Regarding opinions (5) and (7), Defendants argue that Mr. Willis's opinions on Defendants' failure to use "verbal judo" or employ nationally recognized standards should be stricken because there is no national requirement that such standards be followed by law enforcement. Plaintiff argues that Mr. Willis never states that "verbal judo" or any other standard is required, but that Mr. Willis instead relied on verbal judo as an example of communication techniques often taught to law enforcement. This court will note that Mr. Willis's exact words in his opinion are: "[v]erbal judo, (or some variation of it) which has been taught to law enforcement officers nation-wide since 1990, is the 'proper' mechanism for seeking voluntary compliance." Although Mr. Willis does not blatantly state that verbal judo is *required*, he does state that it is the *proper* mechanism by which to seek voluntary compliance. The use of the word *proper* implies to this court that verbal judo, according to Mr. Willis, is a required technique that law enforcement must employ in difficult situations. Because this court does not find case law to support that verbal judo is a nationally required standard, the court will limit Mr. Willis's opinion. Mr. Willis may use verbal judo as an example of communication tactics taught to law enforcement to help guide officers on how to handle certain situations, but Mr. Willis may not imply or state that verbal judo is a requirement or "*the proper*" mechanism. Additionally, this court is of the opinion that Mr. Willis's opinion as to *general* communication standards, policies, and procedures in which law enforcement officers are often trained might assist the trier of fact.

As to opinion (6), Plaintiff concedes that his expert did not review Tunica County policies and should not give a specific opinion as to Defendants' disregard of the county policies. Plaintiff does, however, argue that his expert should be allowed to give an opinion regarding general law enforcement policies and standards that Defendants violated. The court agrees that Mr. Willis should not opine as to Tunica County policies and whether Defendants violated or disregarded

those policies. However, because this court finds Mr. Willis to be a qualified expert in law enforcement, including training of law enforcement officers, this court opines that limiting Mr. Willis' opinion to his knowledge of *general* standards, policies, and procedures often taught to law enforcement—which Defendants may or may not have violated or disregarded—might assist the trier of fact.

As to opinion (8), "an expert may never render conclusions of law." *Goodman v. Harris Cty.*, 571 F.3d 388, 399 (5th Cir. 2009); *see also Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) ("[A]llowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant."); *see also See* 29 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure § 6265.2 (2d ed., Sept. 2018 update) ("[E]xpert testimony does not help where the jury has no need for an opinion because the jury can easily reach reliable conclusions based on common sense, common experience, the jury's own perceptions, or simple logic.").

Here, Mr. Willis intends to offer his opinion that Defendants' actions were unreasonable when considering the *Graham v. Connor* factors ((i) severity of the crime at issue; (ii) whether the suspect poses an immediate threat to the safety of the officers or others; and (iii) whether he is actively resisting arrest or attempting to evade arrest by flight). In its order dated October 12, 2018, the court held that whether Defendants' actions were reasonable hinged on the third *Graham* factor—whether Plaintiff actively resisted when Defendants tried to effectuate an arrest. Mr. Willis's opinion (8) goes beyond merely pointing the jury to facts pertinent to the reasonableness of the force applied and the *Graham* factors. Instead, Mr. Willis seems to make the jurors' decisions for them by stating that "this was not a serious crime"; it "was certainly non-violent"; there was "no immediate safety risk"; "[Plaintiff] was not attempting to flee"; "the resistance, if

6

any, was slight"; and "[t]he force used by officers was . . . not properly measured against the level of resistance actually faced by [Defendants]". Regarding this motion, the court finds that Mr. Willis's opinion that Defendants' actions did not comply with *Graham* should not be allowed because the only relevant factor is (iii) whether Plaintiff actively resisted, and a jury is capable—on its own accord and perception—of deducing whether Plaintiff was actively resisting and whether Defendants' actions were reasonable under the circumstances.

Finally, the court also strikes opinion (10). Federal Rule of Civil Procedure 26(a)(2)(B) provides that an expert's "report must contain a complete statement of all opinions the [expert] will express and the basis and reasons for them. . .". In his report, Mr. Willis simply states that: "[p]oor stabilization techniques and lack of team tactics caused excessive force to be reapplied. Conflicting commands and opposing physical tactics by officers created the illusion of physical resistance." Although Mr. Willis does refer to Defendant Oliver's hands-on interaction with Plaintiff in the fact section of the report, Mr. Willis does not expand on what conflicting demands and what team tactics (or lack thereof) caused the excessive force to be applied. Thus, this court finds that opinion (10) does not satisfy 26(a)(2)(B) requirements as Mr. Willis failed to include a basis and reason for this opinion.

## Conclusion

Accordingly, Defendants' *Motion in Limine (Daubert)* [44] is GRANTED IN PART and DENIED IN PART.

SO ORDERED, this the 22nd day of October, 2018.

/s/ MICHAEL P. MILLS
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI